CLOUSE, BY NEXT FRIEND, ETC. *v.* PEDEN

[No. 30,335. Filed November 12, 1962.]

*Earl C. Townsend, Jr., John F. Townsend, Townsend & Townsend,* of Indianapolis, and *Wernle & Ristine,* of Crawfordsville, for appellant.

*Edgar W. Bayliff, Cook, Bayliff, Mahoney & Martin,* of Kokomo, and *Foley & Berry,* of Crawfordsville, for appellee.

ACHOR, J.—This case comes to us on petition to transfer from the Appellate Court under Acts 1933, ch. 151, §1, p. 800, being §4-215, Burns' 1946 Repl. See: *Clouse* v. *Peden* (1962), 180 N. E. 2d 781, for opinion of the Appellate Court.

This is an action for personal injuries sustained by appellant who was a passenger in appellee's automobile which collided with a farm tractor at the intersection of two county gravel roads.

At the conclusion of appellant-plaintiff's evidence, the court gave the jury a peremptory instruction to return a verdict for the appellee-defendant and entered a judgment on the verdict accordingly. This appeal followed.

Under the record before us, the action of the trial court was proper only if all the evidence favorable to the appellant and all the inferences which might reasonably have been drawn therefrom were not sufficient to establish wilful or wanton misconduct on the part of the appellee. *Reynolds* v. *Langford* (1961), 241 Ind. 431, 172 N. E. 2d 867; *Orey* v. *Mutual Life Ins. Co. of N. Y.* (1939), 215 Ind. 305, 19 N. E. 2d 547; *Phares* v. *Carr* (1952), 122 Ind. App. 597, 106 N. E. 2d 242; *Kostial* v. *Aero Mayflower Transit Co.* (1949), 119 Ind. App. 377, 85 N. E. 2d 644.

The Indiana guest statute, with which we are here concerned, reads as follows:

"The owner, operator, or person responsible for the operation of a motor vehicle shall not be li-

able for loss or damage arising from injuries to or death of a guest, while being transported without payment therefor, in or upon such motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the wanton or wilful misconduct of such operator, owner, or person responsible for the operation of such motor vehicle." Acts 1937, ch. 259, §1, p. 1229, being §47-1021, Burns' 1952 Repl.

The evidence most favorable to the appellant was as follows:

The accident occurred about 4:30 P. M. on August 21, 1957 at an intersection of two county roads made of loose gravel in Clinton County, Indiana. One highway ran north and south and the other east and west. There was a high cornfield on the northeast corner of the intersection which obstructed the visibility of persons approaching from the north and from the east. There were no stop signs at the intersection and no posted speed zone, speed, being reasonable and prudent under the circumstances, not exceeding 65 miles an hour. The weather was warm and it was a clear day.

Appellee operated a 1955 Chevrolet in a westerly direction, along the east and west road and into the intersection, colliding with a farm tractor pulling a wagon, which was being operated in a southerly direction on the north-south road. At said time, appellant, aged 16, was an invited guest, sitting in the right front seat of the car operated by appellee. When appellee reached a point on said road about a mile from the intersection where the accident occurred, appellee increased the speed of the automobile to about 75 or 80 miles an hour. Appellee was seeing how fast the car would run. At a point along said road, about

three-fourths of a mile from the scene of the accident, appellant first cautioned appellee to slow down. He told appellee that there was a crossroad ahead and that he should slow down. When they came to a house a little over a half mile from the place of accident, appellant reminded appellee that the woman who lived in the house had had a wreck at this very crossroad. As the car went along the road at about 75 to 80 miles an hour it would slip and slide and sway. When it was about a third of a mile from the intersection, appellant "started pleading and talking to him [appellee] to get him to slow down." Appellee continued into the intersection without abating his speed or applying his brakes. The tractor and farm wagon traveling from the north entered the intersection ahead of appellee. Appellee's car hit the left rear wheel of the tractor, which was overturned and the operator killed. Appellee's car was a total loss.

The question which we are here required to determine is whether the conduct of the appellee constituted mere negligence or wilful or wanton misconduct, within the meaning of §47-1021, *supra.*

Appellee contends that even though we accept all of the evidence favorable to the appellant, and all of the inferences which might reasonably be drawn therefrom, such evidence is not sufficient to establish more than negligence or recklessness on the part of the appellee. In support of this contention appellee asserts that the only evidence of misconduct chargeable to the appellee were (1) excessive speed, and (2) entering into an intersecting highway without giving preference to the traffic approaching from the right. It is appellee's contention that although each of these acts may constitute negligence or reck-

lessness, they do not constitute wanton or wilful misconduct within the meaning of the guest statute, *supra*. Appellee cites and relies on the case of *Buroker* v. *Brown* (1959), 159 N. E. 2d 140, as supporting the proposition that speed alone is not wanton or wilful misconduct. Appellee also cites the cases of *Reynolds, Admtrx. etc.* v. *Langford, supra* [241 Ind. 431], and *Becker* v. *Strater* (1947), 117 Ind. App. 504, 72 N. E. 2d 580, as supporting the proposition that mere failure to stop at a stop sign or to yield the right-of-way to traffic approaching an intersection from the right, is not such misconduct as to bring the case within the guest statute.

The case of *Buroker* v. *Brown, supra,* as written by the Appellate Court, is no longer authority since transfer of that case was granted to this court. In that case *Buroker* v. *Brown* (1961), 241 Ind. 421, 172 N. E. 2d 849, when considered on transfer, this court recognized that, although speed alone may not in itself be more than negligence or recklessness, excessive speed may, depending upon the attending circumstances, constitute wanton or wilful misconduct.

Accordingly, the foregoing decisions are consistent with the proposition that the misconduct of a host driver, in order to bring it within the purview of the guest statute [§47-1021], *supra,* must be committed while the driver is possessed of a mental attitude with respect to both his driving and his guest, which is adverse to the welfare of his guest. This mental attitude is necessary if the conduct of the operator is to be described as being either "wanton or wilful" misconduct.

As noted in the case of *Brown* v. *Saucerman* (1958), 237 Ind. 598, 601, 145 N. E. 2d 898, the guest statute authorizes recovery from the host driver when his misconduct is either "wanton or wilful."[1]

As stated by the writer of this opinion in the concurring opinion of *Brown* v. *Saucerman, supra* [237 Ind. 598, at page 619]:

> "To be guilty of *wanton* misconduct within the meaning of the statute (§47-1021, *supra*), the driver must (1) be conscious of his misconduct; (2) be motivated by a desire to assert himself or his interests above or beyond, or in reckless indifference for, the safety of his guest, and (3) he must do so knowing that his conduct subjects them to a ... probability of injury." [Our italics.]

We proceed to examine the sufficiency of the facts in this case according to the standards of proof above prescribed. In this case, there is no question but that the appellee was conscious of his misconduct, which was the operation of his automobile, on a loose gravel road, at a greatly excessive rate of speed, into an intersecting road at which oncoming traffic was obscured. The requisite knowledge is known to exist, as it was orally conveyed to the driver by his guest.

Was appellee's misconduct merely an unthinking or irresponsible act and, therefore, mere negligence or recklessness, or was his conduct consciously performed with a mental attitude which would characterize it as wanton? As noted in *Brown* v. *Saucerman, supra,* at page 618, Webster's New International Dictionary 3rd Ed. defines *wanton* as follows: " '. . . undisciplined; not susceptible to

---

1. The word "willful" is defined as "done deliberately: not accidental or without purpose." Webster's New International Dictionary, 3rd Ed.

control; . . . Excessively merry or gay; sportive; frolicsome; . . . marked by or manifesting arrogant recklessness of justice, or the rights or feelings of others, . . .' " Under the facts heretofore stated a jury may have, with reason, believed that appellee's misconduct was "wanton" in that he consciously persisted therein in an undisciplined and sportive manner and with arrogant recklessness as to the rights and feelings of his guest who had entrusted himself to appellee's safe keeping.

Did appellee's misconduct subject his guest to probable injury, and was appellee aware of the hazard of such injury? Upon this issue appellee contends first, that there was, in fact, no proof of the probability of injury resulting from appellee's conduct. In fact, appellee contends that, under the evidence most favorable to the appellant, injury was not only improbable, it was extremely remote. In support of this contention it is suggested that, for example, even though appellee entered the intersection at an excessive rate of speed, this being a country road it was not probable that vehicles would be traveling upon the intersecting highway more than every 15 minutes; that it would require the appellee only about one second to cross the intersection and that, therefore, the ratio of the probability of a collision with other traffic would be only one in 900. In this the appellee presents an interesting and unique argument.

However, we cannot limit the application of the guest statute [§47-1021, *supra*] to those circumstances where collision and injury are, in fact, more probable than improbable. Rather, the term "probable injury," as used in the cases defining wanton or wilful misconduct, must be considered to have reference to situations where there

is a very real and present likelihood of injury under circumstances where the misconduct of the operator of the vehicle would be the proximate cause of the injury.

Appellee also contends that, even though there was a probability of injury as a result of the manner in which appellee drove his automobile, he was not aware of such probability and, therefore, his misconduct cannot be characterized as "wanton or wilful." Appellee asserts that this lack of awareness is conclusively demonstrated by his declarations that there would be no one upon the intersecting roadway at the particular time of day. However, the jury was not bound to accept appellee's statements as speaking the truth in this regard. It was reasonable for appellee to anticipate the normal flow of traffic upon the road and he did not and could not know whether or not traffic was approaching from the right, since the road to the north was obscured by a cornfield. Furthermore, the jury might reasonably have considered that the statement was merely an additional manifestation of arrogant recklessness on the part of appellee as to the rights and feelings of the appellant who was pleading with appellee to slow down.

As stated in the case of *Miller* v. *Smith* (1955), 125 Ind. App. 293, 300, 124 N. E. 2d 874, 877, and as quoted in *Brown* v. *Saucerman, supra* [237 Ind. 598, at page 621]:

> " ' "The question as to whether the accident was caused by the wanton or willful misconduct of the defendant should be left to the jury in all cases where there is any conflict in the evidence or where different inferences from the testimony given [regarding the essential facts] might be reasonably drawn. . . ." *Pierce* v. *Clemens, supra* (113 Ind. App. 65, 46 N. E. 2d 836). (Emphasis supplied.)' "

For the reasons above stated, the evidence was sufficient to present an issue of wanton misconduct to the jury. Therefore, a peremptory instruction at the conclusion of appellant's evidence, that the jury return a verdict for the defendant, was error.

Judgment is, therefore, reversed with instructions to sustain appellant's motion for a new trial.

Arterburn, C. J., and Landis, J., concur.

Bobbitt and Jackson, JJ., concur in the result.

NOTE.—Reported in 186 N. E. 2d 1.