NORMAN J. BROWN *v.* JAMES RICHARDS.

[No. 671A121. Filed February 7, 1972. Rehearing denied March 17, 1972.]

---

1. *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 532, 104 N. E. 2d 669.

*Ford and Todd,* of Madison, for appellant.

*Marshall E. Williams, Heeter, Johnson & Salb,* of counsel, of Indianapolis, for appellee.

WHITE, J.—Plaintiff-appellant's son, aged 17 years, was fatally injured while riding as a guest in an automobile owned and driven by defendant-appellee, aged 19 years. The car left the road and turned over while defendant was attempting to steer it through an S-curve on State Road 56 in Switzerland County, Indiana, approximately two to three miles north of Vevay. Trial was to a jury. At the close of the plaintiff's evidence the trial judge on defendant's motion for judgment on the evidence,[1] directed the jury to return a verdict for defendant, which was done. Plaintiff's motion to correct errors was overruled and plaintiff has appealed.[2]

---

1. See Trial Rule 50, Indiana Rules of Procedure.

2. The record disclosed no entry of judgment for defendant beyond the granting of his motion for judgment, which the trial court treated as a motion for directed verdict under the pre-1970 practice, and the over-

The issue here is whether the trial evidence was sufficient to have sustained a verdict for plaintiff; specifically, whether the evidence would have sustained a finding that the fatal injury was the proximate result of wanton or wilful misconduct by defendant.

*Brueckner* v. *Jones* (1970), 146 Ind. App. 314, 255 N. E. 2d 535, 543, 20 Ind. Dec. 315, quoted *Bedwell* v. *DeBolt* (1943), 221 Ind. 600, 607, 50 N. E. 2d 875, as follows:

"To hold one guilty of 'wilful' or 'wanton' conduct, it must be shown that he was conscious of his conduct and with knowledge of existing conditions that injury would probably result, and with reckless indifference to consequences, he consciously and intentionally did some wrongful act or omitted some duty which produced the injuries."[3]

In *Brueckner,* Judge Sharp also said:

"Since 1937 the Indiana Supreme and Appellate Courts have laid down certain guidelines for the lower courts to follow in evaluating guest cases. An examination of these authorities indicates:

"a. An error of judgment or a mistake standing alone, on the part of the host, will not amount to wanton or wilful misconduct.

"b. The host must have manifested an attitude adverse to the guest, or of 'perverseness,' in that the host must have shown he was indifferent to the consequences of his conduct.

"c. The entire course of conduct of the host leading up to the accident must be considered.

"d. The host must have had actual knowledge of danger confronting the guest."

*Clouse* v. *Peden* (1962), 243 Ind. 390, 396, 186 N. E. 2d 1, 3, was also quoted in *Bruckner* as follows:

". . . [T]he misconduct of a host driver, in order to bring it within the purview of the guest statute (§ 47-1021),

ruling of plaintiff's motion to correct errors. Appellate Rule 4(A) provides in part: "A ruling or order of the trial court granting or denying a motion to correct errors shall be deemed a final judgment, and an appeal may be taken therefrom."

3. Also quoted in *Reynolds* v. *Langford* (1961), 241 Ind. 431, 438, 172 N. E. 2d 867, 870.

supra, must be committed while the driver is possessed of a mental attitude with respect to both his driving and his guest, which is adverse to the welfare of his guest. This mental attitude is necessary if the conduct of the operator is to be described as being either 'wanton or wilful' misconduct." [255 N. E. 2d 543].

Reverting to Judge Sharp's extensive quotation in his *Brueckner* opinion from *Bedwell* v. *DeBolt,* we note ". . . further, acts such as exhibit a conscious indifference to consequences, make a case of constructive or legal wilfulness."[4] Which is to say that the state of a person's mind, his knowledge, his mental attitude, may be shown by circumstantial evidence and no declaration or admission of the person is necessary.[5] In fact, his self-serving statements negating a liability incurring state of mind may be disbelieved by the jury.[6]

Plaintiff's decedent died at the accident scene before anyone reached him. Thus defendant was the only eye witness. A woman who lived near the accident scene testified that she was awakened around midnight by an automobile roar louder than usual. The roar was followed by a thump. She looked out the window but saw no wreck and went back to sleep. The other testimony was from investigating police officers and a state highway department supervisory employee who testified that no road signs were taken down during road resurfacing prior to the accident.

Examining the evidence most favorable to plaintiff in the light of the principles and pursuant to the guidelines noted above, we find that the relevant facts it establishes are these:

1. Defendant had one beer at a drive-in theater.

2. He left the drive-in between 9:00 p.m. and 10:00 p.m. and went to a bowling alley where he met decedent.

---

4. 255 N. E. 2d at 540.
5. *National City Lines* v. *Hurst* (1969), 145 Ind. App. 278, 250 N. E. 2d 507, 510, 18 Ind. Dec. 420, 424.
6. *Sausaman* v. *Leininger* (1957), 237 Ind. 508, 511, 146 N. E. 2d 414.

3. Defendant and decedent left the bowling alley about 11:30 p.m.

4. They drove to Teague Road to view a scene where a friend had had a wreck and then started back.

5. Defendant was driving his Corvair.

6. Defendant knew the road was curvy and that some of the curves were banked and some were not.

7. Defendant was driving 50 to 60 miles per hour.

8. The posted speed limit was 45 miles per hour.

9. Defendant entered the first portion of an S-curve which curves to the right. He negotiated this curve and had no difficulty steering the car on the first curve.

10. He entered the next curve, which angles to the left, and after he finished the curve, the car veered left, seemed to jerk, and defendant lost control.

11. Defendant had no difficulty steering the car on the first curve.

12. He first realized he was going to have difficulty when he turned the car back to the right after it veered left.

13. Out of control, the car traveled 341 feet, left the road and traveled 289 feet.

14. The car rolled over at least three times.[7]

Conceding appellant's proposition that whether an automobile operator's conduct is wilful and wanton must be determined "on the basis of the totality of the circumstances surrounding the incident" and "not on the basis of individual bits of evidence,"[8] we have given full

---

7. This summary is taken verbatim from appellee's brief. We did not adopt it as our own without first satisfying ourselves that it is fair, accurate, complete, and gives plaintiff-appellant the benefit of the most favorable inference in every instance in which the jury (had the case gone to the jury) might have had a choice between reasonable inferences. In reaching that conclusion we have relied heavily, but not blindly, on the failure of appellant's reply brief to question in any way that portion of appellee's brief.

8. *Morgan* v. *Reneer* (1970), 148 Ind. App. 90, 264 N. E. 2d, 71, 77, 23 Ind. Dec. 624, 633.

consideration to *all* the facts and have reached the same conclusion as was reached in *Brueckner* v. *Jones, supra,* albeit on quite different facts:

> "In the present case there is a total lack of evidence as to any mental attitude on the part of the driver which was adverse to the welfare of the guest or which might be considered as a 'perverse motive' in that the misconduct was conscious and intentional, and that the driver under the known circumstances knew that injury would probably result therefrom." [255 N. E. 2d 543].

For that reason the trial court committed no error in granting defendant's motion for judgment on the evidence or in overruling plaintiff's motion to correct errors.

Judgment affirmed.

Buchanan and Sullivan, JJ., concur.

NOTE.—Reported in 277 N. E. 2d 910.